UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LACY CHISOLM,

        Petitioner,

v.                                                                                  Case Number: 10-CV-12388

GREG MCQUIGGIN,                                                  HON. AVERN COHN

        Respondent.
_____/

### MEMORANDUM AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (Doc. 9) AND DISMISSING PETITIONER'S HABEAS PETITION AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

#### I. Introduction

      This is a habeas case under 28 U.S.C. § 2254. Lacy Chisolm ("Petitioner"), a state prisoner, was convicted of first-degree premeditated murder, felon in possession of a firearm, and felony firearm following a jury trial in Wayne County Circuit Court. He was sentenced, as a habitual offender second offense, to concurrent terms of life in prison for the murder conviction, one to five years in prison for the possession conviction, and a consecutive two-year prison term for the felony-firearm conviction. In his petition, he raises claims concerning his actual innocence, a retroactive change in the law regarding self-defense, violations of the Confrontation Clause, the effectiveness of trial and appellate counsel, denial of access to the courts, prosecutorial misconduct, the trial court's failure to admit evidence of the victim's criminal history, and the possible coercion of a witness' statement.

      Before the Court is Respondent's motion to dismiss on the grounds the petition is untimely. For the reasons that follow, the motion will be granted. The Court also will

decline to issue a certificate of appealability.

## II. Facts and Procedural History

The Michigan Court of Appeals summarized the facts as follows:

> Defendant lived alone in a house in Detroit that belonged to his mother, Deloras Chisolm, who lived in Chicago. The victim in this case, Paul Holmes, was Deloras Chisolm's half-brother and had been living in South Carolina, but then moved back to Detroit and into the Chisolm house. Early in the morning approximately two days later, defendant shot Holmes to death inside the house. The prosecution alleged that defendant shot the victim to death "in cold blood" because defendant was upset that Holmes had moved into the house. The prosecution argued that there had been no provocation or fight when Holmes was shot. The defense theory was that Holmes died when he and defendant were arguing and struggling over a pistol, and that Holmes'[s] death was accidental or the result of self-defense while defendant was in fear for his life.
>
> The victim's body was found in his car along the Lodge Service Drive. Both the car and the body, which was in the back seat, had been burned. The presence of accelerants was detected and a police expert in fire investigation opined that gasoline had been poured on the body in the car and then ignited. A pathologist testified at trial that Holmes died from a gunshot wound to his chest; because there was no carbon monoxide in his blood, the pathologist concluded that the victim was dead before the fire started. A firearms expert testified that all three recovered bullets, one from the victim's chest and two from the wall of defendant's house, were the same caliber, .38 or nine millimeter, and were fired from the same weapon. However, the particular weapon could not be determined.
>
> Defendant testified in his own defense, stating that he and Holmes got into an argument following an evening of drinking and smoking crack cocaine. Defendant contended that Holmes pulled out a pistol and pointed it at him. During the ensuing struggle over the gun, defendant testified that the gun went off several times and then Holmes fell back on the couch. Defendant maintained that he had been struggling for his life and defending himself when Holmes was shot. Defendant, claiming that he was upset and confused, admitted that he put Holmes'[s] body in his car and drove to the Lodge expressway, but he denied starting a fire. Defendant also admitted that he threw the pistol on top of a nearby garage.

*People v. Chisolm*, No. 233769, 2002 WL 31105274, at *1 (Mich.Ct.App. Sept. 20, 2002)

(unpublished).

Following his sentencing, Petitioner filed a direct appeal with the Michigan Court of Appeals, which affirmed his convictions and sentences. *Chisolm*, 2002 WL 31105274, at *1-5. He then filed a delayed application for leave to appeal with the Michigan Supreme Court, which was denied on March 31, 2003. *People v. Chisolm*, 468 Mich. 877 (2003) (Table).

On October 27, 2003, Petitioner filed a post-conviction motion in Wayne County Circuit Court, which was denied on December 3, 2003. *People v. Chisolm*, No. 00-011514-01 (Wayne County Circuit Ct. Dec. 3, 2003). Petitioner filed applications for leave to appeal with the Michigan Court of Appeals and Michigan Supreme Court, both of which were denied. *People v. Chisolm*, No. 252997 (Mich. Ct. App. July 9, 2004); *People v. Chisolm*, 471 Mich. 953 (2004) (Table).

Subsequently, Petitioner filed a motion for a new trial and for an evidentiary hearing in Wayne County Circuit Court on April 1, 2005, which was denied. *People v. Chisolm*, No. 00-011514-01 (Wayne County Circuit Ct. Apr. 25, 2005). On February 28, 2007, Petitioner filed another motion for a new trial and for an evidentiary hearing, and again, the trial court denied the motion. *People v. Chisolm*, No. 00-011514-01 (Wayne County Circuit Ct. Mar. 5, 2007).

On July 30, 2008, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals which was dismissed for "lack of jurisdiction because it was not filed within 12 months of the March 5, 2007 order as required by MCR 7.205(F)(3) and because [it was] an appeal of a denial of a successive motion for relief from judgment that is prohibited by MCR 6.502(G)(1)." *People v. Chisolm*, No. 286842 (Mich.Ct.App. Oct. 1, 2008). His application for leave to appeal, filed with the Michigan Supreme Court, was

denied for the same reasons. *People v. Chisolm*, 483 Mich. 1107, 766 N.W.2d 848 (2009).

Petitioner filed the present habeas petition on June 17, 2010, which was signed and dated June 9, 2010.

### III. Analysis

#### A.

There is a one-year period of limitations for habeas petitions brought by prisoners challenging state-court judgments. 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). A habeas petition filed outside the time period prescribed by this section must be dismissed. *Wilson v. Birkett*, 192 F.Supp.2d 763, 765 (E.D. Mich. 2002).

**B.**

Here, Petitioner did not file the petition within the limitations period. As stated above, the Michigan Supreme Court denied his application for leave to appeal on March 31, 2003. Petitioner then had ninety days from that order, or until June 29, 2003, in which to seek a writ of certiorari with the United States Supreme Court. SUP.CT.R. 13. For statute of limitations purposes, his convictions became final on or about June 29, 2003. The limitations period commenced the following day and continued to run uninterrupted until it expired on June 30, 2004. Petitioner was required to file his petition on or before June 30, 2004, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244 (d)(2).

On October 27, 2003, Petitioner filed a post-conviction motion in Wayne County Circuit Court. At that time, he had approximately eight months remaining in the limitations period. The Michigan Supreme Court denied his appeal on December 29, 2004. Petitioner then had until August 29, 2005, in which to file a petition. He did not. Rather, he filed the petition on June 17, 2010, which was signed on June 9, 2010, almost five years after the expiration of the limitations period. Petitioner is thus barred from habeas relief by the untimely filing.

Petitioner, however, argues that even if the petition is untimely, he is entitled to equitable tolling. Petitioner's tolling arguments will be addressed below.

**C.**

The Supreme Court has recently confirmed that the one-year statute of limitations is not a jurisdictional bar and is subject to equitable tolling. *See Holland v. Florida*, --- U.S. ----, 130 S.Ct. 2549, 2560 (2010). The Supreme Court further clarified that a habeas

petitioner is entitled to equitable tolling "only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

In *Dunlap v. United States*, 250 F.3d 1001, 1008-09 (6th Cir. 2001), the Sixth Circuit held that habeas petitions are subject to equitable tolling under the five-part test set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), which provides: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap*, 250 F.3d at 1008; *see also Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009). "These factors are not necessarily comprehensive and they are not all relevant in all cases. Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002) (internal citation omitted). A petitioner has the burden of demonstrating that he is entitled to equitable tolling. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

Petitioner does not assert that he was unaware of the filing requirements, nor does he argue that extraordinary circumstances prevented him from filing a timely petition.

6

Rather, he argues that he is entitled to equitable tolling due to retroactive changes in the law, which occurred in 2006 regarding self defense and which rendered him actually innocent of killing his uncle.

The Supreme Court in *Teague v. Lane*, 489 U.S. 288, 311 (1989) held that a new rule of criminal procedure does not apply retroactively to cases proceeding on collateral habeas review unless a class of conduct is decriminalized or is a "watershed" rule that implicates the fundamental fairness and accuracy of a criminal proceeding. *Saffle v. Parks*, 494 U.S. 484, 494-95 (1990).

Here, Petitioner's convictions and sentences became final in 2003, well before the change in Michigan's Self Defense Act in 2006.[1] Moreover, the Michigan Court of Appeals has held that the Self Defense Act applies prospectively and is not classified as a remedial statute. *People v. Conyers*, 281 Mich. App. 526, 531, 762 N.W.2d 198 (2008). Thus, Petitioner cannot meet his burden under *Teague*. He is therefore not entitled to equitable tolling based on the change in Michigan law.

**D.**

Regarding actual innocence, the Sixth Circuit has held that a claim of actual innocence may equitably toll the one-year limitations period. *Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005). As explained in *Souter*, to support a claim of actual

---

[1] In general, Michigan's self-defense law was amended to allow an individual to use deadly force against another individual with no duty to retreat if the individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. *See* M.C.L. § 780.972(1).

innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

Petitioner does not provide the Court with support for his actual innocence argument. He does not bring forth any new evidence so that no reasonable juror would find him guilty beyond a reasonable doubt. Indeed, Petitioner's actual innocence argument is based on the 2006 changes to Michigan's self defense law, which does not mean Petitioner is factually innocent of the crime.

## IV. Conclusion

For the reasons stated above, Petitioner failed to file the petition within the one-year limitations period established by 28 U.S.C. § 2244(d) and has not demonstrated that he is entitled to statutory or equitable tolling. Accordingly, Respondent's motion to dismiss is GRANTED. The petition is DISMISSED.

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).[2] A certificate of appealability may

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Having considered the matter, jurists of reason would not find the procedural ruling that the Habeas Petition is untimely and cannot be saved by statutory or equitable tolling debatable. Accordingly, the Court DECLINES to issue a certificate of appealability.

SO ORDERED.

      s/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated: April 4, 2011

I hereby certify that a copy of the foregoing document was mailed to Lacy Chisolm, 337157, Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784 and the attorneys of record on this date, April 4, 2011, by electronic and/or ordinary mail.

      s/Julie Owens
      Case Manager, (313) 234-5160